Catherine Cabalo, Esq. (CA Bar No. 248198)
Khushpreet Mehton, Esq. (CA Bar No. 276827)
Peiffer Wolf Carr Kane Conway & Wise, LLP
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
Email: ccabalo@peifferwolf.com
        kmehton@peifferwolf.com

Irakli Karbelashvili, Esq. (SBN 302971)
AllAccess Law Group
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

*Attorneys for Plaintiffs*
*Matthew Little and James Alger*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW LITTLE and JAMES ALGER,<br><br>      Plaintiffs,<br><br>      v.<br><br>BROOKFIELD PROPERTIES RETAIL INC.; GGP NORTHRIDGE FASHION CENTER, LP; Does 1-10 inclusive,<br><br>      Defendants. | CASE NO.  2:23-cv-07164<br><u>Civil Rights</u><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. Violations of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 *et seq.*)<br>2. Violations of the California Unruh Act (Cal. Civil Code § 51 *et seq.*)<br>3. Violations of the California Health and Safety Code, §§19955 *et seq*<br>4. Violations of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*) |

Plaintiffs MATTHEW LITTLE and JAMES ALGER ("Plaintiffs") complain of Defendants BROOKFIELD PROPERTIES RETAIL INC. and GGP NORTHRIDGE FASHION CENTER, LP ("Defendants") as follows:

**INTRODUCTION**

1.    This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business complex known as "Northridge Fashion Center" located at or about 9301 Tampa Ave, Northridge, California ("Northridge Mall" or the "Mall").

2.    Plaintiff Matthew Little ("Mr. Little") is physically disabled and sometimes requires the use of a wheelchair, walker, and other mobility-assistive devices.

3.    Plaintiff James Alger ("Mr. Alger") is also physically disabled and relies on a wheelchair or a scooter for mobility.

4.    Defendants' lack of accessible facilities denies "full and equal" access required by Title III of the Americans with Disabilities Act of 1990 and supplementary California civil rights laws. As a result, Plaintiffs have been continuously denied full and equal access to Northridge Mall and have been embarrassed and humiliated. Plaintiffs seek damages and injunctive relief requiring provision of access under the Americans with Disabilities Act of 1990 ("ADA") and injunctive relief for full and equal access and damages under California law. Plaintiffs also seek declaratory relief and recovery of reasonable statutory attorney fees, litigation expenses, and costs under federal and state law.

**JURISDICTION AND VENUE**

5.    This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq*. Under supplemental jurisdiction, attendant and related causes of action, arising from the same facts, are also brought under California law, including, but not limited to, violations of Health and Safety Code and the Unruh Civil Rights Act.

6.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the

2

amount in controversy exceeds $75,000, which includes the cost of injunctive relief sought, damages, and attorney fees, exclusive of interest and costs, and the parties are citizens of different states. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is in this District and that Plaintiffs' causes of action arose in this District.

**PARTIES**

7.     Plaintiff Mathew Little is a resident of Winnetka, California. At all times relevant to this Complaint, Mr. Little is qualified as a "person with a disability," as this term is used under California law and under federal laws, including, but not limited to, the ADA and Unruh. Mr. Little suffered a stroke in April 2017 which has substantially limited his ability to walk or stand unassisted. Thus, he relies on a walker and a wheelchair for mobility. Mr. Little is unable, due to his physical disability, to independently use public facilities that are not designed or constructed in compliance with applicable accessibility standards to accommodate persons with disabilities who rely on mobility aids. Plaintiff possesses a disabled parking placard issued by the State of California, entitling him to park in designated accessible and van accessible parking spaces. Mr. Little's mother, who does not have a disability, assists him with his travel to and from Northridge Mall.

8.     Plaintiff James Alger is a resident of Porter Ranch, California. At all times relevant to this Complaint, Mr. Alger is qualified as a "person with a disability," as this term is used under California law and under federal laws, including, but not limited to, the ADA and Unruh. Mr. Alger suffers from Charcot-Marie-Tooth disease, a disorder that causes damage to the peripheral nerves and atrophies muscles. A work injury caused this disease to decline rapidly and his condition continues to deteriorate. As a result of his disability, Mr. Alger has severe difficulty walking, as well as difficulty with fine motor skills. Mr. Alger relies on a wheelchair or scooter to ambulate outside the home and is able to drive a vehicle equipped with hand controls. Mr. Alger possesses a disabled parking placard issued

3

by the State of California.

9.   Defendant Brookfield Properties Retail Inc. is a Delaware corporation with its primary place of business in Chicago, Illinois.

10.   Defendant GGP Northridge Fashion Center, LP is a Delaware limited partnership with its primary place of business in Chicago, Illinois. Upon information and belief, GGP Northridge Fashion Center, LP's sole general partner, Northridge GP, LLC is a citizen of Illinois because all of its members are citizens of Illinois. Furthermore, upon information and belief, Michael B. Berman and Shobi Khan are GGP Northridge Fashion Center, LP's limited partners, and both are citizens of Illinois. Also, upon information and belief, GGP Northridge Fashion Center, LP has no other general partners or limited partners.

11.   At all times relevant to this Complaint, Defendants were and are the owners, operators, lessors and/or lessees of the subject business, property, and buildings at all times relevant to this Complaint.

12.   Defendants failed to ensure that the accommodations, goods, services, and opportunities were accessible to Plaintiffs and other members of the public who have physical disabilities. Defendants' failure to comply with Federal and State access laws proximately caused the violations and ongoing violations and damages to Plaintiffs complained of below.

## FACTUAL ALLEGATIONS

13.   Defendants have discriminated against Plaintiffs because Northridge Mall's facilities and policies do not comply with the requirements of the ADA, the Unruh Act, and the California Health and Safety Code. Defendants have failed and refused to provide full and equal access to the services, privileges, benefits, and advantages that they provide to persons without disabilities at Northridge Mall.

14.   Northridge Mall and its facilities, including, but not limited to, its entrances, exits, parking structures, and interior paths of travel, are a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the

4

ADA (42 U.S.C. § 12181(7)) and of California Civil Code §§ 51 *et seq.*

15.     On information and belief, Northridge Mall and its facilities have, since January 26, 1993, undergone either construction, alterations, structural repairs, or additions, subjecting the facility to disabled access requirements of 303 of the ADA (42 U.S.C. § 12183). Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations. Irrespective of Northridge Mall's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

**Facts as to Plaintiff Matthew Little**

16.     On November 21, 2021, in the afternoon, Plaintiff Matthew Little and his mother drove to Northridge Mall to make an appointment at the Apple store to pick up Mr. Little's new computer and to buy headphones. Because the parking lot on the first floor of Northridge Mall's northwest parking structure was full, Mr. Little and his mother made their way up to the second floor to find parking. However, there were very few designated accessible parking spaces available on the second floor and those few spaces were occupied. Thus, they parked in the first open space that they could find, which was several hundred feet from the Mall entrance.

17.     Upon reaching the parking structure elevator door, they found that the elevator was not in service after multiple attempts to call the elevator. There was also no signage indicating that the elevator was not in service and no signage alerting patrons of alternative paths of travel to get to the first floor of the parking garage without the elevator.

18.     Unable to use the elevator, Mr. Little and his mother proceeded to the Mall doors at the northeast corner of the northwest parking structure by crossing a pedestrian bridge that connects the parking garage with the Mall. Mr. Little , however, struggled reaching the Mall entrance doors while using his walker due to excessively sloped path of travel and uneven surface where the parking lot pavement

meets the surface of the pedestrian bridge. Mr. Little experienced difficulty and discomfort navigating the barriers along this pedestrian bridge. Mr. Little was scared that his walker would get stuck in the gaps or areas where the surface was uneven, or that he would fall because he could not navigate the slope of the bridge.

19.     When Mr. Little and his mother finally entered Northridge Mall, they found that the interior elevator was also out of service and again no signage specified that the elevator was not operational. There were also no signs alerting patrons of alternative paths of travel to get to the lower level of the Mall without the elevator. Unable to get down to the first floor where the Apple store was located, Mr. Little sat on the bench in frustration and waited while his mother went to the Apple store for him. Mr. Little's difficulty accessing Northridge Mall on November 21, 2021 made him feel dejected and like a second-class citizen.

20.     On May 16, 2022, at around 1:00 p.m., Mr. Little and his mother returned to Northridge Mall to buy a suit at Macy's. They entered the Mall from Shirley Avenue, at the entrance labeled "Macy's Men's and Home." Mr. Little and his mother could not find any accessible parking on the first floor of the parking structure along the entrance with a large Macy's sign. Accordingly, they had to park in a parking space farther away from the entrance. Mr. Little was left without a visible or clearly marked accessible path of travel and forced to cross the street in an area with low visibility for the drivers making the turn where the pedestrians must cross.

21.     Mr. Little then struggled to find the actual entrance to Macy's because no signage directed him to an accessible entrance. Consequently, Mr. Little attempted to enter Macy's at three locations, traversing the entire length of the Mall to find an appropriate entrance. Although Mr. Little was ultimately able to enter inside the Macy's store, it was only after expending considerable time and energy. At this point he was frustrated and exhausted from being forced to walk all over the Mall to find the entrance to Macy's.

22.     Despite his frustrations, Mr. Little could and would shop at Northridge Mall

in the future if it is made accessible to him, especially because Northridge Mall has a conveniently located Apple Store. Mr. Little, however, is deterred from returning because Northridge Mall remains inaccessible to him.

**Facts as to Plaintiff James Alger**

23.    Mr. Alger likes to dine and shop at the Mall a few times a month, including at the Red Robin and the Apple Store. Mr. Alger drives himself to the Mall in his Tesla. To be able to safely charge his vehicle at the Mall, Mr. Alger requires that the Mall's EV chargers be accessible. At the very least, EV chargers must have sufficient clear floor space and designated disabled parking spaces with a properly marked wheelchair access aisle and a properly marked path of travel to and from the EV charger/parking space so that he can safely leave and return to his vehicle. The Mall appears to provide several free Volta EV chargers for its customers. The Mall lacks policies, procedures, and practices to provide this amenity to all of its patrons including disabled patrons, because none of the EV chargers at the Mall are accessible. These EV chargers do not have an access aisle and a properly marked path of travel serving the EV charger/parking space and/or other accessibility features. As a result, Mr. Alger must use the nearby Tesla Superchargers and travel significantly further to reach the Mall while charging his Tesla. Accordingly, Mr. Alger was repeatedly denied the ability to safely charge his vehicle at the Mall within the two years of the filing of this complaint.

24.    In November 2022, Tesla Superchargers were installed near the corner of Nordhoff St and Tampa Ave, about a third of a mile from the Mall's East entrance ("Tesla Supercharger"). On November 22, 2022; February 1, 2023; March 16, 2023; April 18, 2023; and May 7, 2023, Mr. Alger parked at the Tesla Supercharger and made his way to the Mall in his scooter. To be able to safely reach the Mall from the Tesla Supercharger, Mr. Alger requires an accessible path of travel from the public right of way. However, neither the Mall's South entrance nor its East entrance, have an accessible path of travel from the public right of way. The Southern entrance has

no designated path of travel. Entering through this location forced Mr. Alger to navigate through the vehicular way traveling behind parked and moving vehicles. The East entrance also has no accessible path from the public right of way. Although Mr. Alger was able to safely enter partially into the Mall from the East Entrance during one of the visits after parking at the Tesla Supercharger, the path of travel had no curb cut and Mr. Alger once again had no choice but to roll himself off the curb and navigate through the vehicular path. Moreover, while there is a designated accessible path of travel from the public right of way between the East entrance and Nordhoff St, there is no directional signage to this path of travel. In the past, if there was nobody available to help Mr. Alger load his Scooter in the car, he would use his larger more powerful scooter to travel from his home South down Tampa Avenue to access the Mall. Because the Eastern entrance is before the designated path of travel when coming from the Northern part of the Mall, Plaintiff initially had no idea that this path of travel even existed. It is also inaccessible for various reasons as alleged below.

25.    Mr. Alger complained about his difficulties accessing the Mall to security at the Mall. He also called and left a voicemail with Defendants' management asking for a call back so that he can discuss the barriers to access with a member of Defendants' staff, but he never received a response.  As a result, Mr. Alger is deterred from shopping at the Mall more often until the barriers to his access are removed or remediated.

26.    Before suing, Plaintiffs' accessibility expert did an informal investigation of Northridge Mall. He confirmed the barriers encountered by Plaintiffs and also determined that Northridge Mall was inaccessible in multiple other ways, including, but not limited to, the barriers below, all of which are related to Plaintiffs' disabilities:

//

//

**Diagonal Parking Spaces throughout the Mall**

- There are diagonal parking spaces designated as accessible at several locations in the Mall parking facilities. At the typical diagonal "accessible" parking spaces, the access aisles do not extend the full required full length of the parking spaces they serve.

**Northwest parking structure**

- At the northeast corner of the parking structure, on the designated accessible route where the bridge from the parking structure meets the second floor near the Mall entrance, there is a noncompliant change in level at an aluminum expansion joint cover.

- The access aisle markings are faded at the designated accessible parking near the elevator.

- The elevator call buttons are centered about 39.5 " above the floor, less than the required 42 ".

- At the northeast corner of the parking structure, on the designated accessible route near where the bridge from the Mall meets the parking structure, there is a section of the walking surface that has slopes exceeding 8%. Slopes between 5% and 8.33% are ramps and require compliant handrails on each side and level top and bottom landings. There are no handrails at this ramp. Upon information and belief, the top and bottom landings are not compliant.

- The ramp leading from the parking structure to the west JC Penney entrance has a rise greater than 30 " and does not appear to have compliant intermediate landings that limit any individual ramp run to the maximum allowed 30 " rise. Intermediate ramp landings are required to be level and at least 60 " long.

- At the top of the ramp where it meets the parking structure, there is no 60 " long level landing. There is a grade break immediately at the top of the ramp up from JC Penney and the walking surface slopes down to the parking structure.

- The ramp has handrail on both sides and an intermediate handrail. The walking surface of the ramp at the side handrails has cross slope up to 13%, well beyond the 2.0% maximum.

- The ramp leading to the north Macy's entrance has slopes up to 6%. Slopes between 5% and 8.33% are ramps and require compliant handrails on each side and level top and bottom landings, and intermediate landings where the rise exceeds 30 ". There are no handrails at this ramp.

**Southwest parking structure**

- At the designated accessible parking at the first floor of the southwest parking structure near Macy's, some of the pavement markings are faded, including the required "No parking" wording in the access aisles.

- There are 6 designated accessible car spaces and 2 designated accessible van spaces south of Macy's. The closest entrance to the Mall from these spaces is the southwest entrance to the Mall near Orange Julius. There is a sign on the first-floor doors to Macy's that says "Closed men's home furniture gallery entrance on the second level." When you cross the drive aisles from the accessible parking to the sidewalk on the opposite side, there is no signage directing you to go to the correct Mall entrance and not to go to the doors to Macy's, which are not in use.

- On the route from these designated accessible spaces to the Mall entrance near Orange Julius, there are curb ramps in three locations that have surface-applied detectable warnings in three locations. The surface-applied detectable warnings create a noncompliant change in level on the curb ramp of approximately .25 " at the edges of the detectable warning. This occurs at several curb ramps onsite.

- Across from the south entrance to Macy's, there are two diagonal car spaces designated as accessible. There are no van accessible spaces near this entrance. Neither of the designated accessible car spaces have access aisles at least 60 " wide, the painted markings on one side of each access aisle is curved.

- At the south entrance to Macy's, there are ramps on both side of the entrance. None of the handrails at the top of the ramps extend horizontally the required 12 ". At the bottom of the ramps, the handrail extends beyond the bottom of the ramp at one location only.

**Parking East of Macy's**

- The diagonal designated accessible van space has a trapezoidal access aisle that is 90 " wide, less than the 96 " wide required. The curb ramp at the

10

transition from the walk to the parking lot on the route to these spaces has surface-applied detectable warnings. The surface-applied detectable warning creates a noncompliant change in level on the curb ramp of approximately .25 " at the edges of the detectable warning. This occurs at several curb ramps onsite.

**Southeast parking structure**

- South of the bridge to the Food Court, the designated accessible car parking space has an access aisle that is less than 5'-0 " wide.

- At the second bridge north of the southwest corner of the parking structure, the width of the access aisle at the designated accessible car parking space south of the bridge is reduced by the built-up ramp leading to the bridge.

- At the northwest corner of the parking structure, the marked accessible route from the designated accessible parking leads to a ramp/curb ramp with handrails. The handrail extensions at the bottom of the ramp are not level and the grade break at the handrails does not appear to be aligned with the grade break at the bottom of the ramp.

- The ramp has surface-applied detectable warnings. The surface-applied detectable warning creates a noncompliant change in level on the curb ramp of approximately .25 " at the edges of the detectable warning. This occurs at several curb ramps onsite.

- Adjacent to the south Macy's entrance there is a very wide set of stairs leading from the second floor down to the first floor. This stair is at least 20 feet wide and has two flights, both flights have handrails along the outer edges and one intermediate handrail. Most of the handrails terminate at or just beyond the stair nosing's at the top and bottom of the stair flights. Most of the handrails at the top of the stair flights do not have the required 12 " long horizontal extension nor do most of the handrails at the bottom of the stair flights have the required sloping portion of the handrail that extends a distance equal to the tread depth and a 12 "-long horizontal extensions.

- This stair is at least 20 feet wide and has two flights, both flights have handrails along the outer edges and one intermediate handrail. Upon information and belief, this stair should have intermediate handrails located

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES
AND DEMAND FOR JURY TRIAL

so that all portions of the stairway minimum width or required capacity are within 30 " of a handrail.

- The ramp at the center bridge and at the bridge to Curacao both have surface-applied detectable warnings. The surface-applied detectable warnings create a noncompliant change in level on the curb ramp of approximately .25" at the edges of the detectable warning. This occurs at several curb ramps onsite.

**North end of the Mall at the circular plaza**

- The ramp at the northeast side of the plaza has noncompliant handrail extensions. The handrails do not have a grade break that matches the grade break at the ramp and do not appear to extend 12 " beyond the top and bottom of the ramp.

- The circular stair at the northside of the plaza has eight noncompliant handrails. The top handrail extensions do not appear to extend horizontally above the landings for 12 ". At the bottom of the stairs, the handrails do not appear to extend at the slope of the stair flight for a horizontal distance equal to one tread depth beyond the last riser nosing.

**North end of the Mall**

- There are noncompliant changes in level in the maneuvering clearance at the entrance doors to the Mall. The noncompliant changes in level are created by chipped areas in the concrete walking surface.

- At the entrance doors to the Mall, the non-fixed floor mat was pushed up and overlapping the door threshold. This created a walking surface that was not firm and stable.

- Near Wood Ranch there are three diagonal designated accessible parking spaces, two standard spaces and one van space. The access aisles at the diagonal parking spaces do not extend the required full required length of the parking spaces they serve (*i.e.*, 18' minimum length).

**North end of the Mall along the covered walk**

- There are noncompliant changes in level in the walking surface. The noncompliant changes in level are created by chipped areas in the concrete walking surface.

**East side of the Mall near the Food Court**

- There is a sloped walk leading from the second floor of the parking structure to the bridge Mall entrance near the Food Court that appears to be sloped in excess of 5% and would need to be treated as a ramp. There is no six-foot-long level landing at the bottom of the ramp, and the bottom of the ramp is adjacent to the vehicular way. At the top of the ramp, the transition strip between the tile and concrete creates an excessive change in level within the top landing.

- There is an exterior seating dining area provided with tables and chairs. None of the tables provide an accessible dining surface with the required knee and toe space. The tables have a center-pedestal support that obstructs the required toe space.

**Food Court**

- The accessible tables are located at each end of the seating dining area and are not dispersed throughout the seating area.

- Within the dining area there are high counters with high stools. There are no accessible lowered dining surfaces at the high counters.

- There are padded booth-type benches that have rectangular tables with a center pedestal support in front of them. The center-pedestal support obstructs the required toe space. There are chairs on the opposite side of the tables. None of the tables at the booths provide an accessible dining surface.

- The benches are the only padded seats in the dining area. None of the chairs are padded, including the chairs at the at the rectangular tables at each end of the dining area.

- There are no accessible dining surfaces in the dining area near Subway. All of the tables are rectangular with a center pedestal support. The center-pedestal support obstructs the required toe space.

//

//

//

13

**Potato Corner**

- There are no accessible dining surfaces in the seating area near Potato Corner. All of the tables have a center pedestal support. The center-pedestal support obstructs the required toe space.

**Restrooms**

- At the men's restroom near the Food Court, the drain piping and/or the water supply piping under the lavatories are not insulated or otherwise configured to prevent contact.

- At the men's restroom near the Food Court, in the designated accessible toilet compartment, the center line of the toilet paper dispenser is approximately 16" in front of the water closet, well beyond the allowable range of 7 " minimum and 9 " maximum in front of the water closet.

- At the men's restroom near the Mall office, the drain piping and/or the water supply piping under the lavatories are not insulated or otherwise configured to prevent contact.

- At the men's restroom near the Mall office, in the designated accessible toilet compartment, the center line of the toilet paper dispenser is approximately 13.5" in front of the water closet, well beyond the allowable range of 7 " minimum and 9 " maximum in front of the water closet.

- At the men's restroom near the Mall office, the designated accessible toilet compartment has a baby changing table within the toilet compartment. Baby changing tables are prohibited within accessible toilet compartments because they obstruct access within the stall.

- At the men's restroom near the Mall office, within the designated accessible toilet compartment, the water closet is adjacent to the same toilet compartment partition that contains the side-opening door. Doors are required to be in the front partition or in the side wall or partition farthest from the water closet. This is typically accomplished by having the water closet and the toilet compartment door located at diagonal corners of the compartment.

- At the men's restroom near Tokyo Lifestyle, in the designated accessible toilet compartment, the center line of the toilet paper dispenser is

approximately 3.5 " in front of the water closet, well below the allowable range of 7 " minimum and 9 " maximum in front of the water closet.

- At the men's restroom near Tokyo Lifestyle, the drain piping and/or the water supply piping under the lavatories are not insulated or otherwise configured to prevent contact at one of the six lavatories.

**Near the Tokyo Lifestyle store**

- There is a high counter with stools near the Tokyo Lifestyle store. The high counter has electrical receptacles and was being used by a Mall patron as a workspace with their laptop. There are no similar accessible counters with electrical receptacles in this area.

**Stairs near the Foot Locker store**

- This stair does not have compliant 12" minimum length handrail extensions at the top and bottom of the stair flights.

- The door leading to the stair has an illuminated exit sign. The tactile sign adjacent to the door reads "Exit" -- it should read "Exit Stair Down."

**Path of Travel Near Ashley's Furniture**

- There is a ramp (running slopes exceeds 5.0%) from the back of the public right of way into the Mall.

- The handrail stops approximately 4'8" from the top of the ramp.

- The top of the ramp buts into the back of the public right of way sidewalk.

- There is no level landing at the top of the ramp, the sidewalk slopes up to 5.1% in the opposite direction of the ramp.

- At the bottom of the ramp there is a painted crosswalk across the parking lot with blue and white parallel stripes and white hashmarks.

- Crosswalk across the parking lot has at least one area with 2.6% cross slope.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES
AND DEMAND FOR JURY TRIAL

- The sloped sidewalk west of the crosswalk has running slope up to 5.5%.

- The sidewalk along the north side of the Ashley Home has at least one section of 2.5% cross slope.

- In front of the Ashley Home store entrance there are three marked crosswalks crossing the drive aisle, two go to accessible parking spaces and the center crosswalk goes to a parallel curb ramp.

- At the west side of the crosswalk, there is a noncompliant change in level at the intersection between the concrete curb and asphalt paving at the curb ramp.

- The curb ramp on the west side (near Blaze Pizza) of the crosswalk is curved.

- The curb ramp adjacent to Blaze Pizza is a curved parallel curb ramp. The ramped sections are curved, as is the landing.

- Back at the corner near Blaze Pizza, the route continues north to the mall entrance near Curacao. The sidewalk here has a section of older concrete near where the route turns west to the Mall entrance that has chipped areas that create noncompliant changes in level

**Path of Travel Near Porto's**

- There is a marked crosswalk from the public right of way sidewalk to the sidewalk adjacent to Porto's.

- There is a localized area within the marked crosswalk that has 6.4% running slope.

- There are curved blended transitions at the southeast and northeast corners of Porto's.

- There is a localized area of chipped concrete within the marked crosswalk at the southeast corner of the parking structure.

- The curb ramp at the southeast corner of the parking structure is a curved parallel curb ramp. The ramped sections are curved, as is the landing.

- The sidewalk along the east side of the parking structure has sections with cross slope between 2.8% and 3.4%. There are sections where the cross slope extends across the full width of the sidewalk.

- There is a partially marked crosswalk at the northeast corner of the parking structure. The crosswalk appears to have been painted twice, the markings overlap and do not align. Approximately the first third of the crosswalk adjacent to the parking structure is unmarked.

- The curb ramp adjacent to Gold's Gym is a curved parallel curb ramp. The ramped sections are curved, as is the landing.

**EV Chargers Near Dave & Busters**

- There are two EV chargers near Dave & Buster's. Both chargers are in planter islands behind curbs. The EV chargers are not adjacent to an accessible route, do not have a compliant clear floor space, the parking spaces may not be required width, and do not have an adjacent access aisle.

27.  These barriers to access are listed without prejudice. Plaintiffs will use the discovery process, including expert discovery, to identify all the noncompliant conditions for which they seek injunctive relief, and will seek to amend their complaint to include all non-compliant conditions related to their disabilities that are identified during the site inspection.

28.  Plaintiffs allege that it would be a futile gesture to provide notices of violations relating to their continued or attempted visits, which are certain to occur regularly following the filing of this Complaint. Therefore, Plaintiffs will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

17

29.    Defendants knew, or should have known, that these elements and policies rendered Northridge Mall inaccessible, violate state and federal law, and interfere with or deny access to individuals with similar mobility disabilities. Upon information and belief, Defendants have the financial resources to remove these barriers and make Northridge Mall accessible to persons with physical disabilities. To date, however, Defendants refuse to remove those barriers or to provide full and equal access to Northridge Mall.

30.    Defendants were previously sued for accessibility violations in *Baskin v. GGP Northridge Fashion Center, LP et al.* United States District Court, Central District of California, Case No. 2:11-cv-08160-GAF -PLA, thus they were aware of their duties to remove barriers that prevent persons with mobility disabilities like Plaintiffs from obtaining full and equal access to Northridge Mall.

31.    As a result of Defendants' actions and failures to act and failure to provide disabled access, Plaintiffs suffered a denial of their civil rights, emotional discomfort, and denial of rights to full and equal access to public accommodations, all to their general, special, and statutory damages. On each such denial of access, Plaintiffs have encountered barriers to full and equal access which have caused them difficulty, discomfort, and embarrassment. Plaintiffs have been required to seek legal assistance, and seeks statutory attorney fees, litigation expenses, and costs, under federal and state law.

32.    Plaintiffs' goal in this suit is a positive one: to make Northridge Mall fully accessible to persons with similar mobility disabilities.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE ADA, TITLE III**
**[42 U.S.C. 12101 *et seq.*]**

33.    Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them below as if separately repled.

34.     Plaintiffs were at all times relevant qualified individuals with a disability as defined by the ADA, as they have impairments that substantially limit one or more major life activities.

35.     Plaintiffs have reasonable grounds for believing they will endure discrimination each time that they may attempt to access and use the subject facilities.

36.     The subject property and facility are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. 12181(7)(A).

37.     The acts and omissions of Defendants set forth here was in violation of Plaintiffs' rights under the ADA and the regulations promulgated under it, 28 C.F.R. Part 36, *et seq.*

38.     Plaintiffs allege on information and belief that Northridge Mall was either designed or constructed, or both, after January 26, 1993 -- independently triggering access requirements under Title III of the ADA. Here, Defendants violated the ADA by designing or constructing Northridge Mall in a manner that did not comply with federal and state disability access standards even though it was practicable to do so.

39.     The removal of each of the barriers complained of by Plaintiffs were at all times mentioned "readily achievable" under the standards of § 12181 and § 12182 of the ADA. The ability to use accessible parking, have compliant paths of travel, and directional signage is a fundamental necessity. Without this ability, Plaintiffs cannot avail themselves of the goods and services offered at the subject premises. Therefore, the benefits of creating access do not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a public accommodation. Furthermore, these are the types of barriers identified by the Department of Justice as presumably readily achievable to remove, and, in fact, these barriers are readily achievable to

19

remove. Also, as noted throughout this Complaint, removal of each of the architectural barriers was also required under California law.

40. Plaintiffs allege on information and belief that Northridge Mall was modified after January 26, 1993. Any alterations, structural repairs or additions since January 26, 1993, have independently triggered requirements for removal of barriers to access for disabled persons per § 12183 of the ADA.

41. Defendants have discriminated against Plaintiffs in violation of Title III of the ADA by:

    a) providing benefits to Northridge Mall that are unequal to that afforded to people without disabilities;

    b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of Northridge Mall to individuals with disabilities;

    c) failing to remove architectural barriers in existing facilities where such removal is readily achievable; and

    d) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of Northridge Mall available through alternative methods if such methods are readily achievable.

42. On information and belief, as of the date of Plaintiffs' visits to Northridge Mall and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiffs, which violate Plaintiffs' rights to full and equal access and which discriminate against them on the basis of their disability, thus wrongfully denying to them the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation

20

of § 12182 and § 12183 of the ADA.

43.     Under the ADA, 42 U.S.C. § 12188 *et seq*., Plaintiffs are entitled to the remedies and procedures set forth in 204(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a)-3(a), as they are being subjected to discrimination based on disability in violation of the ADA or have reasonable grounds for believing that they are about to be subjected to discrimination.

44.     Plaintiffs seek relief under remedies set forth in 204(a) of the Civil Rights Act of 1964, 42 § U.S.C. 2000(a)-3(a), and under Federal Regulations adopted to implement the ADA.

        WHEREFORE, Plaintiffs request relief as outlined below.

## SECOND CAUSE OF ACTION:
## VIOLATION OF UNRUH CIVIL RIGHTS ACT
### [Cal. Civil Code 51 *et seq.*]

45.     Plaintiffs replead and incorporates by reference, as if fully set forth again here, the allegations contained in all paragraphs of this Complaint and incorporates them here by reference as if separately repled hereafter.

46.     Northridge Mall is a business establishment within the meaning of the Unruh Act. Defendants are the owner and operators of a business establishment.

47.     Defendants violated the Unruh Act by their acts and omissions:

     a) Failure to construct or alter Northridge Mall in compliance with state building code and state architectural requirements;

     b) Failure to remove known barriers to access at Northridge Mall;

     c) Failure to modify policies and procedures as necessary to ensure Plaintiffs full and equal access to the accommodations, advantages, facilities, privileges, or services of Northridge Mall; and Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal. Civil Code 51(f).

21

48.     Plaintiffs have experienced barriers to access at Northridge Mall, all of which have caused him major difficulty, discomfort, and embarrassment. Plaintiffs suffered mental and emotional damages, including statutory and compensatory damages, according to proof.

49.     On information and belief, Northridge Mall is also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access after inspection by Plaintiffs' access consultant(s)/expert(s).

50.     These barriers to access render Northridge Mall and its premises inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. Plaintiffs pray for leave to amend this Complaint, if necessary, to obtain full injunctive relief as to barriers that limit or deny full and equal access to Plaintiffs.

51.     Each violation of the ADA constitutes a separate violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief under California law, including, but not limited to, Civil Code § 52(a).

52.     As for Defendants' violations of the Unruh Act that are not predicated on violations of the ADA, Defendants' behavior was intentional: Defendants were previously sued for accessibility violations, *Baskin v. GGP Northridge Fashion Center, LP et al.* United States District Court, Central District of California, Case No. 2:11-cv-08160-GAF -PLA, thus they were aware of their duties to remove barriers that prevent persons with mobility disabilities like Plaintiffs from obtaining full and equal access to Northridge Mall. Defendants' discriminatory practices and policies that deny full enjoyment of Northridge Mall to persons with physical disabilities reveal actual and implied malice and conscious disregard for the rights of Plaintiffs and other similarly disabled individuals. Thus, Defendants have engaged in willful affirmative misconduct in violating the Unruh Act.

53.     On information and belief, the access features of Northridge Mall have not been improved since Plaintiffs' visits there. Plaintiffs' injuries are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible facilities to Plaintiffs.

54.     At all times mentioned here, Defendants knew, or in the exercise of reasonable diligence should have known, that their barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiffs and upon other persons with similar mobility disabilities, but Defendants failed to rectify the violations, and presently continues a course of conduct in maintaining barriers that discriminate against Plaintiffs and similarly situated disabled persons.

WHEREFORE, Plaintiffs request relief as outlined below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE CALIFORNIA HEALTH AND SAFETY CODE**
**[Cal. Health and Safety Code §§19955 *et seq.*]**

55.     Plaintiffs replead and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

56.     Health & Safety Code §19955 provides in pertinent part:

> The purpose of this part is to ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part "public accommodation or facilities" means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers. When sanitary facilities are made available for the public, clients or employees in such accommodations or facilities, they shall be made available for the handicapped.

57.     Health & Safety Code §19956, which appears in the same chapter as §19955, provides in pertinent part, "accommodations constructed in this state

23

shall conform to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code … .” Health & Safety Code §19956 was operative July 1, 1970, and applies to all public accommodations constructed or altered after that date.

58.     On information and belief, portions of Northridge Mall and/or of the building(s) were constructed and/or altered after July 1, 1970, and substantial portions of Northridge Mall and/or the building(s) had alterations, structural repairs, and/or additions made to such public accommodations after July 1, 1970, thereby requiring Northridge Mall to be subject to the requirements of Part 5.5, §19955, *et seq., of* the Health & Safety Code upon such alteration, structural repairs or additions per Health & Safety Code §19959.

59.     Under the authority delegated by Government Code §4450, *et seq.*, the State Architect promulgated regulations for the enforcement of these provisions. Effective July 1, 1982, Title 24 of the California Building Standards Code adopted the California State Architect's Regulations and these regulations must be complied with as to any alterations and/or modifications of Northridge Mall and/or the building(s) occurring after that date. Construction changes before this date but after July 1, 1970 triggered access requirements under the "ASA" requirements, the American Standards Association Specifications, A117.1-1961.

60.     On information and belief, at the time of the construction and modification of said building, all buildings and facilities covered were required to conform to each of the standards and specifications described in the American Standards Association Specifications and/or those contained in the California Building Code.

61.     Northridge Mall is a "public accommodation" or "facility" within the meaning of Health & Safety Code §19955, *et seq.*

62.     As a result of the actions and failure to act of Defendants, and because

24

of the failure to provide proper and legally accessible public facilities, Plaintiffs were denied their right to full and equal access to public facilities and suffered a loss of civil rights.

WHEREFORE, Plaintiffs request relief as outlined below.

## FOURTH CAUSE OF ACTION:
## VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
### [Cal. Civil Code 51 *et seq*]

63.    Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

64.    Northridge Mall is a place of public accommodation and/or places to which the public is invited and, as such, they must comply with the provisions of the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

65.    The CDPA guarantees, among other things, that persons with disabilities have the same right as the public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

66.    The CDPA also guarantees, among other things, that persons with disabilities have a right to full and equal access, as other members of the public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code § 54.1(a) (1).

67.    The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA, California Civil Code § 54.1(d).

68.    Defendants have violated the CDPA by, among other things, denying and/or interfering with Plaintiffs right to full and equal access as other members of the public to the accommodations, advantages, and its related facilities due to their disability.

WHEREFORE, Plaintiffs request relief as outlined below.

## PRAYER FOR RELIEF

69.    Plaintiffs have no adequate remedy at law to redress the wrongs suffered as stated in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as alleged here, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California;

70.    Plaintiffs request a declaratory judgment that Defendants' actions, omissions, and failures—including but limited to: failing to remove known architectural barriers at Northridge Mall to make the facilities "accessible to and useable by" mobility disabled persons; failing to construct or alter Northridge Mall in compliance with federal access standards, state building code, and state architectural requirements; and failing to make reasonable modifications in policy and practice for Plaintiffs and other persons with similar mobility disabilities;

71.    Plaintiffs request that the Court issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:

a)    From continuing the unlawful acts, conditions, and practices described in this Complaint;

b)    To provide reasonable accommodation for persons with disabilities in all its programs, services, and activities at Northridge Mall;

c)    To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at Northridge Mall;

26

d)      To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including, without limitation, the removal of all barriers to access where "readily achievable;"

e)      To maintain such accessible facilities once they are provided;

f)      To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons at Northridge Mall;

g)      To implement nondiscrimination protocols, policies, and practices for accommodating persons with mobility disabilities at Northridge Mall.

72.      Plaintiffs request that the Court retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of above no longer occur, and cannot recur;

73.      Plaintiffs request all appropriate damages, including, but not limited to, statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

74.      Plaintiffs request all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including, but not limited to, the ADA, 42 U.S.C. 12205; the Unruh Act, California Civil Code 52; and "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure 1021.5;

75.      Plaintiffs request prejudgment interest under California Civil Code 3291;

76.      Plaintiffs request interest on monetary awards as permitted by law; and

77.      Plaintiffs request any other relief that this Court may deem just and proper.

Dated: August 30, 2023                    PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

                                          */s/ Catherine Cabalo*
                                          By: Catherine Cabalo

27

Attorneys for Plaintiffs
Matthew Little and James Alger

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Dated: August 30, 2023          PEIFFER WOLF CARR KANE CONWAY
                                & WISE, LLP

                                */s/ Catherine Cabalo*
                                By: Catherine Cabalo
                                Attorneys for Plaintiffs
                                Matthew Little and James Alger

28